### W. H. COMER V. BURTON-LINGO COMPANY ET AL.

Decided June 30, 1900.

**1. Contract in Restraint of Trade—Common Law.**

Where the restraint of trade in a contract is unlimited both as to place and time, the contract is at common law void, and if unlimited as to place only, it is illegal; but if it is limited as to place, though not as to time, or if limited both as to time and place, its validity will depend on the reasonableness of the restriction.

**2. Same—Anti-Trust Statute.**

Where there were only four parties and firms engaged in the lumber business in a certain city; and three of them, in order to prevent competition and control prices, combined together to buy out the other's business and good will, contracting that such other should not re-enter such business at that place within ten years thereafter, the contract, though valid at common law, is void under the anti-trust statute of Texas. Rev. Stats., art. 313.

APPEAL from Johnson. Tried below before J. M. HALL.

*O. T. Plummer* and *George B. Green,* for appellant.

*Davis & McKoy,* for appellees.

TEMPLETON, ASSOCIATE JUSTICE.—The appellant, W. H. Comer, and one J. C. Morton were partners, and were engaged in business as dealers in lumber at Cleburne, Texas. On October 5, 1895, they sold their stock in trade, together with the good will of the business, to the appellees, and at the same time entered into a written agreement with the appellees, which agreement reads as follows: "That we shall go out of said business, and that we will not, and that neither of us shall, go back in said business, or lumber business, or engage to work for any one in said business, or lumber business, and that we will not sell lumber or any articles which we have been carrying, and are now carrying in said business, within the limits of the said city of Cleburne, Texas, for a period of ten years from this date, and we do hereby bind and obligate ourselves and each of us, as a part of the consideration for the said amount which is to be paid us by said Burton-Lingo Company, Conway & Leeper, and A. C. Ford, to go out of and not to engage in any manner, for ourselves or for anyone else, in the business we are now engaged in, and which is being bought from us by said Burton-Lingo Company, Conway & Leeper, and A. C. Ford, within the limits of said city for a period of ten years from this date, with this exception: we or either of us have the right and privilege to buy an interest with the said Burton-Lingo Company, Conway & Leeper, and A. C. Ford in their said lumber business within the limits of said city, now or at any time in the future, provided either of said parties should see proper to sell any part or all of their business to us, and that we have the right to accept employment from either Burton-Lingo Company, Conway & Leeper, or A. C. Ford in the lumber business."

Thereafter the appellant resumed the lumber business at Cleburne,

and the appellees, Burton-Lingo Company, Conway & Leeper, and A. C. Ford brought this suit to restrain him from continuing such business and for damages. The appellant filed an answer, one paragraph of which reads as follows: "And further answering herein, defendant says plaintiffs ought not to be allowed to recover against him on said written contract, because he says at the time he entered into said contract there were only four firms or companies in the city of Cleburne, Texas, engaged in the lumber business, to wit, the defendant and J. C. Morton as one firm; Burton-Lingo Company as one firm; Conway & Leeper as one firm, and A. C. Ford as one firm, and that no other firms were engaged in buying and selling lumber for profit in said city at the time defendant entered into said contract with plaintiffs, and that for the purpose and with the intent to control the sale of lumber and to create and carry out restrictions in the sale of lumber in said city, and also to create and carry out restrictions in the free and full pursuit of the lumber business in said city in buying and selling lumber in said city, and also to increase the price of lumber in said city, and to prevent competition in the sale of lumber there, and to fix a certain standard whereby the price of lumber intended for sale, use, or consumption in said city should be controlled and established, and also for the purpose of keeping the price of lumber at a fixed and graded figure in said city, and also for the purpose of creating a monopoly in purchasing and selling lumber by themselves and by their said firms and companies in the city of Cleburne, plaintiffs combined, confederated, agreed, and contracted among, with, and between themselves to purchase the lumber then owned by defendant and J. C. Morton in Cleburne, and did then and there, under said agreement and contract, among, with, and between themselves for the purpose aforesaid, purchase the lumber then owned by defendant and J. C. Morton in the city of Cleburne, mentioned in said written contract, and did then enter into said written contract with defendant and J. C. Morton, and as part of the consideration plaintiffs paid the defendant and J. C. Morton for said lumber plaintiffs obligated and bound defendant and J. C. Morton, as a firm and as individuals, to go out of the lumber business and not to go back into said business or lumber business, or engage to work for anyone in said business or lumber business, and not to sell lumber within the limits of the city of Cleburne for a period of ten years from the date of said contract, except defendant and said Morton were granted the right to work in the lumber in the city of Cleburne during the said ten years for either of said firms, provided either of said firms should consent to give defendant and said Morton such employment, and except defendant and said Morton were granted the right to purchase an interest in the business of either of said firms in the city of Cleburne, or to purchase the entire interest of either of said firms in the lumber business in the city of Cleburne. Wherefore defendant says that said contract is illegal and void and ought not to be enforced against defendant."

The appellees interposed a general demurrer to said paragraph of appellant's answer, which demurrer was sustained by the court, and the

appellant excepted. There was a trial which resulted in a decree granting the injunction prayed for and in a judgment for $56 damages.

The appellant has appealed from said judgment and decree, and has assigned as error the action of the court below in sustaining the general demurrer to the paragraph of his answer quoted above. No other question is presented. It is insisted that the contract sued on is null and void, both at common law and under the statute.

1. It is universally held by the courts of the United States, in passing on such contracts, that if the restraint is unlimited both as to time and place, the contract is void, and it appears to be generally conceded that if the restraint is unlimited as to place only the contract is illegal. On the other hand, if the restraint is limited as to place, though not as to time, or if limited both as to time and place, the validity of the contract depends on the reasonableness of the restriction. In determining whether the restraint is reasonable in any particular case, all the circumstances surrounding the transaction must be taken into consideration. On such inquiry the nature of the business, the sum invested, the demands of trade in the territory to be affected, and all other matters of like character, are material. Where the circumstances appear in the face of the contract, the courts will determine the question of the reasonableness of the restriction as a matter of law. When they do not so appear, the contract will not be held invalid, but, when sued on, the party seeking to avoid liability under it should plead and prove the facts which would make it unlawful. Its illegality will not be presumed, but must be shown by proper pleadings and established by sufficient evidence. The restriction may relate as well to the acceptance of employment as to the carrying on of a business.

In this case the restraint is limited both as to time and place, and the circumstances surrounding the transaction are not stated in the contract. An inspection of the contract does not disclose any facts which would make it void. The plea of the appellant simply charges that the appellees, being the only other dealers in lumber at Cleburne, combined to buy and did buy the stock and good will of Comer & Morton, for the purpose of preventing competition and controlling prices. These facts, if true, do not show any injury or wrong done to or suffered by the appellant, and there being no allegation of an agreement between the appellees not to compete with each other, or of an agreement to sell only at certain prices, the public was not affected. The contract was valid and binding at common law.

2. The anti-trust law does not apply to the sale of a business and the good will thereof, accompanied by an obligation on the part of the seller not to resume business for a limited time at a specified place, where the purchaser is a single person or firm. Gates v. Hooper, 39 S. W. Rep., 1079; Erwin v. Hayden, 43 S. W. Rep., 611. Does it apply to a combination of two or more dealers to buy the stock and good will of an opposition dealer for one of the purposes prohibited by the statute? The combination prohibited by the law in force when the contract before us was entered into was the union or association of the capital, skill,

or acts of two or more persons, firms, or corporations for the purpose of doing either of the things denounced by the statute. If the combination is consummated and its purpose is unlawful, then it is immaterial as to whether it is reasonable from a business standpoint, or as to how it will affect the public. The object of the statute was to prohibit any combination having for its purpose the doing of either of the things specified, without regard to the intention of the parties or to the immediate effect of the combination on trade and commerce, as the power arising from such combination was believed to be dangerous to public interests. Therefore the Legislature did not attempt to regulate such combinations, but prohibited them entirely.

It is charged against the appellees that they entered into a combination to buy, and did buy, the stock in trade and good will of Comer & Morton. Such combination required the union of the acts and of part of the capital of the appellees, and if the purpose of the combination was to create or carry out restrictions in trade or in the free pursuit of business or to prevent competition, it was unlawful. It is alleged that such was its purpose, and, while the allegations contained in appellant's plea are general in their nature, we think that the plea is good on general demurrer.

The statute declares that all contracts and agreements in violation of the anti-trust law are absolutely void and not enforceable either in law or equity. By this suit the appellees seek to secure the benefits of their alleged illegal combination, and the courts are not permitted to lend their aid toward the accomplishment of such purpose.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*