CRANDALL v. SCOTT et al.

(Court of Civil Appeals of Texas. Amarillo. Dec. 6, 1913.)

1. MONOPOLIES (§ 12*) — VALIDITY — ANTI-TRUST LAW—"TRUST."

The Anti-Trust Act (Rev. Civ. St. 1911, art. 7796) defines a "trust" as a combination of capital, skill, or acts by two or more persons, or association of persons, to create or carry out restrictions in the free pursuit of any legal business, or to abstain from engaging in or continuing business. Plaintiff and two other concerns, who conducted a moving picture business in the town, made an agreement by which the others gave notes to plaintiff in consideration of plaintiff stopping business and agreeing that no showhouse except the two owned by the makers should open in the town before a certain time, and that if a showhouse of a certain standard should open within the time and run for six months, all of the notes maturing after the opening of the house should be void, and that if a showhouse should open and run for less than such period, the notes should be void for the time it was conducted. *Held*, that the contract was in violation of the Anti-Trust Act and void.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*

For other definitions, see Words and Phrases, vol. 8, pp. 7116–7119, 7822.]

2. MONOPOLIES (§ 12*)—ILLEGAL CONTRACTS—ANTI-TRUST STATUTES.

A combination in violation of the anti-trust statute (Rev. Civ. St. 1911, art. 7796) is void, irrespective of the common-law distinction between restrictions on trade which are reasonable and those which are unreasonable.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

3. APPEAL AND ERROR (§ 173*) — PRESENTATION BELOW.

Notwithstanding failure of defendants' pleadings to attack the validity of the contract, under which the notes sued on were executed, the appellate court will consider the validity of the contract, where it is apparent upon the record that it is void.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1079–1089, 1091–1093, 1095–1098, 1101–1120; Dec. Dig. § 173.*]

Error to Potter County Court; W. M. Jeter, Judge.

Action by Percy Crandall against C. R. Scott and others. Judgment for defendants, and plaintiff brings error. Affirmed.

S. E. Fish, of Amarillo, for plaintiff in error. Hugh L. Umphres, of Amarillo, for defendants in error.

HENDRICKS, J. The plaintiff in error, Percy Crandall, sued in the county court of Potter county, Tex., the defendants in error, C. R. Scott, W. G. Underwood, and J. W. McQueen, on 10 promissory notes, executed by the defendants in error, in favor of the plaintiff in error, and which were a part of and based upon the following contract:

"State of Texas, County of Potter. This memorandum of an agreement this day entered into by and between Percy Crandall, party of the first part, and J. W. McQueen, C. R. Scott and W. G. Underwood, parties of the second part, witnesseth, that parties of the second part agree to pay party of the first part $25.00 per month for each and every month between now and the 1st day of March, 1912, as evidenced by their fifteen promissory notes, each for the sum of $25.00, due at intervals of one month, and payable to the order of party of the first part, this day executed by parties of the second part; and, that party of the first part in consideration thereof warrants to the parties of the second part that no show business besides the Majestic, the Deandi and the Grand shall open in Amarillo, Potter county, Texas, before March 1st, 1912, and that if a showhouse; other than the above mentioned three does open in said Amarillo within said time, the floor space of which equals 2860 square feet, the assets and expense of installation of which equals $1000.00, and which runs as a showhouse steadily for a period of six months, then all said notes maturing after the opening of said showhouse shall become null and void, and be canceled thereby. That party of the first part further agrees that should a showhouse of the same, less or more assets and expense of installation and floor space or the Grand Opera House open in vaudeville and picture within said Amarillo within said time, and run less than six months, then that for all the time such last-named shows shall so run, the notes covering that period shall be null and void and canceled thereby. Parties of the second part agree that neither of them will be directly or indirectly interested in the opening or running nor will they encourage the opening or running of any showhouse other than the three above named in said Amarillo within said time, and it is mutually agreed and understood that if they do either, then that such occurrence will in no wise invalidate any of said notes, nor in any wise relieve any party thereto from liability thereon. Signed in duplicate this ―――― day of Nov. 1910. Percy Crandall, Party of the First Part. W. G. Underwood, C. R. Scott, J. W. McQueen, Parties of the Second Part."

It will be seen that the contract is somewhat ambiguous upon the face of it, wherein it reads that "the party of the first part * * * warrants to the parties of the second part that no showhouse besides the Majestic, the Deandi and the Grand shall open in Amarillo, Potter County, Texas, before March 1st, 1912"—ambiguous for the reason that from the pleadings and the evidence in the case it was evidently the intention of the contract that the Grand should not open nor continue open to the period named, but, on the other hand, should be closed. We make this explanation for the reason that this ambiguity is eliminated from the case by the pleadings of both parties, as well as the undisputed evidence in the case. The cause was tried in the county court without the assistance of a jury and judg-

ment rendered against the notes as obligations; upon what specific ground, however, we are not advised.

Among other grounds of resistance in this court to a reversal of this cause, the defendants in error assert the proposition that the contract between the parties, and set out herein, is in violation of what is commonly called the "Anti-Trust Statute" of the state. At the time of the execution of this contract and of the notes by Crandall, the plaintiff in error, the defendants in error, Underwood, Scott, and McQueen, were the proprietors of a moving picture show in Amarillo, Tex., known and designated as the Majestic, and at the same time one Charles Stolp was the proprietor of another moving picture show, known as the "Deandi." The plaintiff in error, Crandall, was the owner and conducted a moving picture show in said city, designated as the "Texas Grand," which were the three places of amusement of that character at that time in said city.

C. R. Scott, one of the defendants in error, testified as follows: "About the 14th day of November, 1910, the contract introduced in evidence was entered into by those signing the same. At the same time a similar contract was made between Percy Crandall on one part and Charles H. Stolp (the owner of the Deandi) on the other part. Each of the contracting parties in the two contracts knew of the two contracts, and Stolp knew of our contract that has been introduced, and the Majestic and Deandi people had joined their efforts to get Percy Crandall to close his show, the consummation of their efforts being that he did close on the basis set forth in said contracts with the Majestic and the Deandi, and the said Underwood McQueen and myself executed the notes previously introduced in evidence and shown to be signed by us in pursuance of the contract introduced in evidence in this suit so as to close Mr. Crandall's place. * * * After the execution of these instruments, the Texas Grand, Mr. Crandall's show, closed and remained closed, and for several months there were no other showhouses running in Amarillo in vaudeville or moving pictures, except the Majestic, run by the defendants in this suit, and the Deandi, run by Mr. Stolp. During this time as the notes became due they were paid off." The witness then testified in regard to the opening and establishment of another moving picture show in Amarillo as a defense with reference to another provision of the contract, which we think unnecessary to mention or discuss.

The testimony of Scott, relating to these matters, is undisputed, and it is to be particularly noted that the joinder of the efforts of the proprietors of the Majestic and the Deandi and the consummation of said cooperation produced the contract and the notes in question.

[1] The particular provisions of the anti-trust statute which we think applicable to the propositions involved are as follows: "A 'trust' is a combination of capital, skill or acts by two or more persons, firms * * * or association of persons, or either two or more of them for either, any and all of the following purposes: First. * * * To create or carry out restrictions in the free pursuit of any business authorized or permitted by the laws of this state. * * * Seventh. To abstain from engaging in or continuing business, * * * partially or entirely within the state of Texas, or any portion thereof." Rev. Civ. St. 1911, art. 7796.

The case of Gates v. Hooper, decided by the Supreme Court of this state, 90 Tex. 563, 39 S. W. 1079, in a case where a merchant sold to another his stock of goods and good will, agreeing to abstain from the same business in the same town for a certain period of time, held that, "in order to constitute a trust within the meaning of the statute," the combination of capital, skill, or acts by two or more means a union or association of such persons and the united cooperation of such agencies. In that case the mere sale by one party of his business and good will to another party for a valuable consideration, where the seller agreed to abstain from business in a certain town for a certain period of time, was not such union and co-operation as constituted a "combination" within the purview of the Anti-Trust Act. The abstention from business necessarily resulted from the sale of the "good will"; otherwise the transfer of the "good will" would have been nugatory; or, as the Supreme Court put it, "The seller was, by the terms of the contract, restrained from doing the thing which, if done, would have defeated in part the effectiveness of the sale." However, in this case, we have a different character of contract and different acts, more far-reaching in their consequences, manifested here. It is noted, first, that there are three rival businesses in Amarillo; two of them joined together to put the third out of business and a consummation of their efforts results in the execution of the notes, the abstention from business, a warrant upon the part of one of the parties that no "showhouse" besides the Majestic and the Deandi shall open in Amarillo before a certain time; and further agree that if a showhouse of certain standard should open in said Amarillo within said time and run as such steadily for a period of six months, then all of said notes maturing after the installation and opening of said showhouse shall become null and void, and, agreeing further, that if a "showhouse of the same, less or more assets and expenses of installation and floor space or the Grand Opera House, open in vaudeville and pictures within said Amarillo within said time and run less than six months," then for the period of time conducted the notes covering the same period are void. It is noted that the other parties agree that

neither of them will be directly or indirectly interested in the establishment of any showhouse other than the Majestic and the Deandi within the period of time named, and if they should become so interested they would not be relieved from liability on the notes.

In this cause the proprietors of the Majestic and the Deandi, "joined their efforts to get Crandall to close his show," and as a consummation of their efforts the contracts were made and Crandall did close upon the "basis set forth in said contracts with the Majestic and the Deandi," as the undisputed evidence of the witness declares. We are drawn to the conclusion that the "combination" existed within the denouncement of the statute, "to create restrictions in the full pursuit of any business * * * permitted by the law of the state," and also the "combination" existed for the purpose to obtain Crandall to "abstain from engaging in or continuing business" in a "portion" of the state.

[2] When the "combination" exists within the contemplation of the law, the Supreme Court has said (Texas & Pac. Ry. Co. v. Lawson, 89 Tex. 400, 34 S. W. 920) that "the statute ignores the common-law distinction between restrictions which are reasonable and those which are not," and "it relieves the courts of determining whether, in a particular case, any effect will be given such a contract by declaring that it 'shall be absolutely void, and not enforceable, either in law or in equity.'" The statute further says, "for each and every day that such violation shall be committed or continued a punishment accrues," and hence we think that when the representatives of the different moving picture shows got together and acted and Crandall agreed to stay out of business for a certain period, the acts of combination were committed; and when Crandall warranted that no other "showhouse" of a certain standard would be opened within a certain time and agreed to close and stay out of business for a certain time, which he in reality agreed to do under the contract, and the others agreed that they would not enlarge their own business, or be interested in any manner in the opening or establishment of any other moving picture show in Amarillo, the union and co-operation continued. It might be said that the contract in a sense did not prohibit their going into a new business, and if they did, they would have to pay the notes, and though they contracted not to open another show, if they should by themselves, or in partnership with others, open a business, they would be estopped to deny the notes, because they could not open or be interested in opening a showhouse of the standard mentioned in the contract, and then plead it and take advantage of their own wrong. Crandall did not take chances, but inserted it in the contract, which was a continuing one, and each agreed in the future to stay out of the business to a certain period of time, on the one side by not opening another in Amarillo, and Crandall to abstain entirely for the same period; and we are not concerned with results, whether beneficial or prejudicial. See the case of Comer v. Burton Lingo & Co. et al., 24 Tex. Civ. App. 251, 58 S. W. 969, where the proprietors of three lumber companies purchased a fourth, the latter abstaining from the lumber business for a certain period, where Judge Templeton held upon the pleadings the acts were unlawful, and said, "Such combination required the union of the acts and of part of the capital of the appellees [the purchasing lumber dealers], and if the purpose of the combination was to create or carry out restrictions, * * * in the free pursuit of the business * * * it was unlawful." It is true in that case that all the lumber dealers expressly became parties to the contract to eliminate the fourth from competition, and upon the pleadings the court held the contract in violation of other provisions of the anti-trust statute, additional to the one we quoted from the opinion of that court; however upon analysis of the opinion in that cause, it is quite analogous to the record here.

[3] It is contended here that the pleadings of defendant do not raise the point; but if that be true, it is so prominently apparent upon the record that it is a void contract, we are required to pass upon it—the very right of the cause is dependent upon it—and we think the judgment of the lower court should be affirmed; and it is so ordered.

Affirmed.