LANGEVER v. UNITED ADVERTISING CORPORATION. (No. 10891.)

(Court of Civil Appeals of Texas. Fort Worth. Feb. 7, 1924.)

**1. Monopolies ☞12(4) — Agreement between two firms by which one quit business held not in violation of anti-trust statute.**

An agreement between two firms doing business in a certain city, whereby one of them was not thereafter to engage in such business in such city, was not in violation of Rev. St. 1911, art. 7796, though the two firms were the only firms in similar business in the city.

**2. Contracts ☞117(5)—Agreement held not an unreasonable restraint of trade.**

An agreement between two firms, engaged in the bill-posting business in a certain city, and having no competitors, that one of them shall not thereafter engage in such business in such city, is not contrary to public policy, as in unreasonable restraint of trade.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by the United Advertising Corporation against J. J. Langever. From an order granting temporary injunction, defendant appeals. Affirmed.

Charles T. Rowland and Marvin H. Brown, both of Fort Worth, for appellant.

Ross, Ross & Alexander, of Fort Worth, for appellee.

DUNKLIN, J. On June 1, 1910, J. J. Langever, Ike Epstein, and Mose Epstein, partners doing business under the trade name of Independent Bill Posting Company, executed a written contract in favor of the Robinson Posting Service, a partnership composed of Mitchell W. Greenwall and George Robinson. In that contract the Independent Bill Posting Company was designated as parties of the first part, and the Robinson Posting Service as party of the second part. The instrument recites a cash consideration of $237.50

paid to parties of the first part by party of the second part, for which parties of the first part transferred and conveyed to the Robinson Posting Service the business good will of the grantors, and certain billboards and leases, on which the same had been erected, with warranty of good title to the billboards so conveyed. The instrument contains this further provision:

"In consideration of the purchase of said billboards and the payment of said sum of money aforesaid, the said parties of the first part hereby contract, covenant, and agree with said parties of the second part not to hereafter engage in the bill-posting business in the city of Fort Worth, Tex., either individually or in connection or partnership with any other person or persons, or as a corporation or otherwise."

At the time that instrument was executed, the grantors and grantees were all engaged in the bill-posting business in the city of Fort Worth, Tex. Thereafter George Robinson sold and conveyed to Mitchell W. Greenwall all his interest in the partnership business of the Robinson Posting Service, and in consideration of said conveyance contracted and agreed not to further engage in the bill-posting business in the city of Forth Worth in competition with Greenwall. Later, Greenwall, who was then doing business under the trade-name of Fort Worth Poster Advertising Service, sold and conveyed to the United Advertising Corporation of Texas all the physical properties, advertising contracts, leases, franchises, business good will, trade-names, and other rights and benefits, corporeal and incorporeal, owned and used by Greenwall in the bill-posting business, and further covenanted with the grantee not to engage in the same business in the city of Fort Worth or Dallas of Waco within ten years from the date of the conveyance. All of those conveyances were by express terms made assignable, and title to the property and rights conveyed was warranted to the grantees and their assigns.

The company last named instituted this suit to restrain J. J. Langever from engaging in the bill-posting business in the city of Fort Worth, in violation of the terms of his contract with the Robinson Posting Service, referred to above, to the injury of plaintiff, who is now engaged in the bill-posting business in the city of Fort Worth, and who it is alleged had acquired the right to the relief prayed for, under and by virtue of the foregoing conveyances.

From an order by the judge of the district court, granting the temporary writ of injunction prayed for, Langever has prosecuted this appeal.

The hearing of the application for a temporary writ of injunction was solely upon the pleadings of the parties, all of which were duly verified. The contract and conveyances referred to above were attached to the plaintiff's petition as exhibits, and there was no denial of their execution as alleged, nor was there any plea of want of considerations recited therein as having been paid.

Following numerous exceptions to plaintiff's petition, the defendant filed a special answer in which it was alleged that at the time the Independent Bill Posting Company executed the instrument in favor of the Robinson Posting Service, those two firms were the only competitors in the bill-posting business in the city of Fort Worth, and that the Robinson Posting Service procured the execution of the same for the sole purpose of preventing competition in the bill-posting business and controlling prices therefor, and that, prior to the making of that contract, the Independent Bill Posting Company was engaged in doing business at a cheaper rate than that done by the Robinson Posting Service, and that by reason of those facts the contracts sued on by the plaintiff are in violation of the anti-trust statutes of the state of Texas, prohibiting monopolies in this state, and are therefore void and unenforceable.

The defendant further denied that he ever contracted to refrain from engaging in the bill-posting business in the city of Fort Worth in competition with the Fort Worth Poster Advertising Service or with the plaintiff. Defendant further denied that either plaintiff or the Fort Worth Poster Advertising Service ever purchased the contract sued on, and further alleged that the plaintiff is endeavoring by and through this suit to stifle and prevent legitimate competition in the bill posting business in the city of Forth Worth, where the defendant is its only competitor.

[1] In support of his contention that the contract executed by him and relied on by plaintiff is void and unenforceable, appellant has cited the following provisions of article 7796, Revised Statutes:

"A 'trust' is a combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons, or either two or more of them for either, any or all of the following purposes:

"1. To create, or which may tend to create, or carry out restrictions in trade or commerce or aids to commerce or in the preparation of any product for market or transportation, or to create or carry out restrictions in the free pursuit of any business authorized or permitted by the laws of this state.

* * * * * * *

"7. To abstain from engaging in or continuing business, or from the purchase or sale of merchandise, produce or commodities partially or entirely within the state of Texas, or any portion thereof."

Appellant also cites Comer v. Burton-Lingo Co., 24 Tex. Civ. App. 251, 58 S. W. 969, in which it was held that an agreement by one firm, which was doing a lumber business in the city of Cleburne, Tex., to cease the pursuit of that business and to refrain from en-

gaging in the same business in the same town for a period of 10 years, in consideration of the purchase of its business by three other firms engaged in the same business, in pursuance of an agreement between them to make such purchase in order to suppress competition in the business, was a violation of the statute above quoted and was therefore void. But in that opinion the decision of our Supreme Court in Gates v. Hooper, 90 Tex. 563, 39 S. W. 1079, was cited but was distinguished by reason of the fact that in the Gates v. Hooper Case the purchaser was a single person or firm. In the latter case it was held that where the purchase and sale is between two parties only there is no combination in restraint of trade, within the meaning of the anti-trust statute referred to above. To the same effect is Erwin v. Hayden (Tex. Civ. App.) 43 S. W. 611. We are of the opinion that the two decisions last cited are applicable to the present suit, since the contract relied on by the plaintiff was between two firms only, and the agreement sought to be enforced was not in violation of the anti-trust statute.

[2] It is also insisted by appellant that aside from the anti-trust statute the contract sought to be enforced was an unreasonable restraint of trade, and therefore contrary to public policy and void, under the rules of common law.

In 13 Corpus Juris, p. 468, the following is said:

Sec. 412. "According to the early common law of England, an agreement which placed any restriction on a man's right to exercise his trade or calling was void as against public policy. But it is to be remembered that at the time when this doctrine was held a man could not lawfully exercise any trade to which he had not been duly apprenticed and admitted, and one who was so admitted was obliged by statute to follow and exercise his trade under a penalty. Hence an agreement by such a person not to exercise his trade was an agreement not to earn a living at all, and likewise an agreement to omit a legal duty, the latter a clearly illegal agreement, and the former one likely to injure the public and society."

Sec. 413. "In course of time the strict doctrine of the early common law was relaxed in the English courts and agreements in restraint of trade were classified under three heads; (1) Where the restraint was unlimited as to both time and space; (2) where it was limited as to time but unlimited as to space; and (3) where it was limited as to space but unlimited as to time. In the first and second cases the agreement was void; in the third it was valid. These fixed rules were followed by both English and American courts until within the past few years when a new view was introduced making the validity of the agreement dependent on the reasonableness of the restraint."

Sec. 416. "Even according to the early rule, it is no objection to an agreement reasonably limited in point of space that it is unlimited in point of time and may therefore continue during the whole life of the party restrained. Thus the courts have repeatedly sustained as valid agreements by the vendor of a business, trade, or profession, or by employees, etc., without limitation as to time, not to carry on the business, trade, or profession in a certain town village, city, or county, even though it be a large city; within certain limits in a city; in a town or city, and vicinity; or at any place which will interfere with the business sold. The courts have also sustained an agreement not to run a stage on a specified road, and an agreement by a vendor of a milk route not to serve milk over the same route. An agreement not to engage in a certain business in a certain town while another carries on the same business there is valid."

Many decisions from different states are cited which sustain what is stated in the text. To the same effect, and to the further effect that such contracts are assignable and are enforceable at the instance of the assignee, are a number of authorities cited in a note in 4 A. L. R. p. 1078, and Coker v. Richey, 104 Or. 14, 202 Pac. 551, 204 Pac. 945, 947, 22 A. L. R. p. 744, also other decisions cited in note on page 754. See, also, 6 R. C. L. pp. 793, 794, 799, and 800, and authorities cited in 24 L. R. A. (N. S.) p. 924.

In Malakoff Gin Co. v. Riddlesperger, 108 Tex. 273, 192 S. W. 530, two persons owning a cotton gin plant and grist mill sold to a partnership, operating under the name of Malakoff Gin Company, their gin and mill outfit, under an agreement that the vendors would not engage in any other gin or mill business in the same community where the purchasers were doing a like business while the purchasers were so engaged, and that contract, as limited by the facts stated in the opinion, was held not to be in restraint of trade at common law or in violation of the anti-trust statutes of the state. In the same case it was further held that an assignee of a purchaser could enforce the contract.

In Raymond v. Yarrington, 96 Tex. 443, 72 S. W. 580, 73 S. W. 800, 62 L. R. A. 962, 97 Am. St. Rep. 914, it appears that Raymond purchased from Yarrington and Harwood their milling business in the city of Austin, and the contract of purchase contained this stipulation on the part of the sellers, Yarrington and Harwood:

"We specially agree and bind ourselves not to enter into or conduct a milling agency business in the city of Austin or the territory above designated without the written permission of J. H. Raymond, Jr., or his assigns."

Although that contract was unlimited as to time, it was held to be enforceable at Raymond's instance and against Yarrington alone, who had engaged in business in violation of the agreement, although Harwood had not violated the agreement. In other words, it was held that the agreement was binding upon the sellers severally as well as jointly. The following decisions are also in line with

the authorities above cited: Saye v. Garrard (Tex. Civ. App.) 204 S. W. 684; Schlag v. Johnson (Tex. Civ. App.) 208 S. W. 369; Schluter v. McLeod (Tex. Civ. App.) 199 S. W. 311; Smith-Calhoun Rubber Co. v. McGhee Co. (Tex. Civ. App.) 235 S. W. 321.

We conclude that the contention of appellant that the agreement sought to be enforced was an unreasonable restraint of trade and therefore void because contrary to public policy must be overruled. Accordingly, the order of the trial court granting the temporary writ of injunction is affirmed.