

# THE ATTORNEY GENERAL
# OF TEXAS

**AUSTIN 11, TEXAS**

GERALD C. MANN
~~WILL WILSON~~
ATTORNEY GENERAL

Honorable Jesse Owens
District Attorney
Vernon, Texas

Dear Sir:

Opinion No. O-2792
Re: Restraint of trade; whether con-
tract to quit business and re-
frain from engaging in same busi-
ness for a period of six years,
coupled with agreement not to sell
equipment for use in such business
in a county in Texas is violative
of penal provisions of anti-trust
laws.

We have had under consideration your request for our
opinion as to whether a certain contract is in violation of
Article 1632, Penal Code of Texas. In order to properly ap-
praise the questions involved, we copy the gist of the con-
tract as submitted by you:

"This contract and agreement made and entered
into on this the 10th day of August, A.D., 1940, by
and between Walter Baucum of Hardeman County, Texas
party of the first part, and H. W. Thaten of Chil-
dress County, Texas, and W. L. Beasley of Hardeman
County, Texas, parties of the 2nd part, and for such
contract and agreement witnesseth:

"For and in consideration of the sum of $700.00
to me, cash in hand paid on this the 10th day of
August, 1940 as follows: $350.00 by H. W. Thaten,
one of the parties of the 2nd part and $350.00 paid
by W. L. Beasley, the other party of the 2nd part,
the receipt of which is hereby acknowledged, and
confessed, I, Walter Baucum, party of the first
part, do hereby assign, convey and sell unto the
said parties of the 2nd part, jointly, all of the
patronage and good will of Walter Baucum indivi-
dually and the Blue Ribbon Bakery of Quanah, Texas,
of which the said Walter Baucum is sole owner,
and for said consideration agree and bind Walter
Baucum individually and the Blue Ribbon Bakery

of Walter Baucum individually in the bakery business in Hardeman County, Texas, on this the 10th day of August, 1940 and further agree that for a period and time of six years from this date, the said Walter Baucum will not engage in the making, distribution or sale of bread or other bakery products, either directly or indirectly within the territorial limits of Hardeman County, Texas. And for the same consideration agree that said Blue Ribbon Bakery will be closed to business on this date and that the equipment and property used in connection therewith will not be assigned or transferred to any other person, company, corporation or association of persons to be used in the bakery business either directly or indirectly in Hardeman County, Texas, for a period of six years from this date."

The above contract is signed and acknowledged by all three parties.

Article 1632, Penal Code, to which you refer, reads as follows:

"A 'trust' is a _combination of capital, skill or acts by two or more persons_, firms, corporations or associations of persons, or either two or more of them _for any or all of the following purposes_:

"1. _To create, or which may tend to create or carry out, restrictions in trade or commerce_ or aids to commerce, or in the preparation of any product for market or transportation, _or to create or carry out restrictions in the free pursuit of any business authorized or permitted by the laws of this State_.

"2. To fix, maintain, increase or reduce the price of merchandise, produce, or commodities, or the cost of insurance, or of the preparation of any product for market or transportation.

"3. _To prevent or lessen competition in the manufacture, making transportation, sale or purchase of merchandise, produce or commodities_, or the business of insurance, _or to prevent or lessen competition in aids to commerce, or in the preparation of any product for market or transportation._

"4.   To fix or maintain any standard or figure whereby the price of any article or commodity of merchandise, produce or commerce, or the cost of transportation, or insurance, or the preparation of any product for market or transportation, shall be in any manner affected, controlled or established.

"5.   To make, enter into, maintain, execute or carry out any contract, obligation or agreement by which the parties thereto bind, or have bound, themselves not to sell, dispose of, transport or to prepare for market or transportation any article or commodity, or to make any contract of insurance at a price below a common standard or figure, or by which they shall agree, in any manner, to keep the price of such article or commodity, or charge for transportation or insurance, or the cost of the preparation of any product for market or transportation, at a fixed or graded figure, or by which they shall, in any manner, affect or maintain the price of any commodity or article, or the cost of transportation or insurance, or the cost of the preparation of any product for market or transportation, between them or themselves and others, to preclude a free and unrestricted competition among themselves or others in the sale or transportation of any such article or commodity or business of transporation or insurance, or the preparation of any product for market or transportation, or by which they shall agree to pool, combine or unite any interest they may have in connection with the sale or purchase of any article or commodity, or charge for transportation or insurance, or charge for the preparation of any product for market or transportation, whereby its price or such charge might be in any manner affected.

"6.   To regulate, fix or limit the output of any article or commodity which may be manufactured, mined, produced or sold, or the amount of insurance which may be undertaken or the amount of work that may be done in the preparation of any product for market or transportation.

"7.   To abstain from engaging in or continuing business, or from the purchase or sale of merchandise, produce or commodities partially or entirely within this State, or any portion thereof." (Emphasis ours.)

We have underlined all of those portions of the statute which appear to be in any wise applicable to your case. Your particular inquiry is whether paragraph 3 is violated by the contract and attendant facts. You stress the assertion that Baucum did not in fact sell his business but only agreed to close same and move out of the town of Quanah, Texas. It appears from your letter that the State is in position to prove that pursuant to the contract, Baucum did close his doors and agreed not to make, distribute or sell bread or other bakery products in Hardeman County, Texas, for a period of six years, and that none of his property will be assigned or transferred to any other to be used in the bakery business in the prescribed territory for such period of time.

There have been relatively few cases before our appellate courts construing the criminal law provisions of the anti-trust statutes of this State. Although the general language employed in the Revised Civil Statutes is the same as that used in the Penal Code, and Article 7426, Revised Civil Statutes, is in exactly the same language as Article 1632, Penal Code, supra, they were enacted by the Legislature as separate bills, and the enactment appearing in the civil code became a part of the statutory law of this state at a subsequent time. See State v. Standard Oil Co., 130 Tex. 313, 107 S.W. (2d) 550, reversing Civ. App., 82 S.W. (2d) 420. We have been unable to find, nor do we believe exists, any case by the Court of Criminal Appeals deciding the question submitted by you.

It is interesting to note that the provisions of the Penal Code recently withstood a most aggressive attack leveled at the constitutionality thereof. In an able and elaborate opinion Judge Christian of the Commission of the Court of Criminal Appeals upheld the law. See Ex parte Tigner, Cr. App., 132 S.W. (2d) 885. A motion for rehearing was filed, but was overruled; whereupon, the case was appealed to the Supreme Court of the United States and finally affirmed, Tigner v. State of Texas, 60 S. Ct. 879, 84 L. Ed. 756. Mr. Justice Frankfurter delivered the opinion of the Supreme Court and specifically overruled the case of Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 46 L. Ed. 679, 22 S. Ct. 431, long relied upon as making the penal provisions of our anti-trust laws inoperative. The latter case may well explain the dearth of criminal cases arising in this state.

In our study of your question we have found many expressions of the general principles of law applicable to your case. We shall briefly discuss a few of the various authorities, citing others for your consideration.

In Williston on Contracts, Vol. 5, () 1636, p. 4580, appears the following:

"It is everywhere agreed that in order to be valid a promise imposing a restraint in trade or occupation must be reasonable. The question of reasonableness is for the court, not the jury; and in considering what is reasonable, regard must be paid to (a) the question whether the promise is wider than is necessary for the protection of the convenantee in some legitimate interest, (b) the effect of the promise upon the covenantor, and (c) the effect upon the public. If the restraint imposed is greater than is necessary for the protection of the covenantee, the promise is necessarily invalid. One whose business is confined to New York is not helped by the promise of another not to do business in Chicago, and if the promise is enforced by injunction the promisor is injured, while the promisee is not correspondingly helped. Such a case in the simple form supposed would not often arise, but very commonly a promise is exacted which includes not only a restriction advantageous to the promisee, but one injurious to the promisor without corresponding benefit to the promisee. Such a promise, unless divisible, is wholly invalid. Even if no objection can be taken on this ground, the effect may conceivably be so harsh in its consequence upon the promisor that enforcement of the promise will be refused. Finally, even though neither of the foregoing objections exists, the effect of the promise on the public interest may be such as to make enforcement contrary to public policy. In considering the nature of this last objection, _it must be recognized at the outset that the purpose of any restrictive agreement is almost always to lessen competition with the promisee, thereby enabling him to do a larger business and on terms more favorable to himself than he could do if he had not obtained the promise in question. This purpose has been regarded, especially in the United States, as so inimical to the public interest than generally it is only in cases where the restrictive promise is ancillary to some other transaction that its validity has been upheld. Thus, if a dealer should pay a competitor to promise to go out of business, or cease to compete, the agreement would be invalid. . . . . ._" (Emphasis ours.)

The underscored portion of the above quotation is copiously annotated, and among the cases listed in support of the text is the case of Potomac Fire Insurance Co. v. State, (Tex. Civ. App.) 18 S. W. (2d) 929.

From Ruling Case Law, we quote as follows:

"From the tests laid down for determining the validity of such an agreement, it seems to follow that <u>no conventional restraint of trade can be enforced, unless the covenant embodying it is merely ancillary to the main purpose of a lawful contract, and necessary to protect the covenantee in the enjoyment of the legitimate fruits of the contract, or to protect him from the dangers of an unjust use of those fruits by the other party</u>. This statement of the rule implies that the contract must be one in which there is a main purpose, to which the covenant in restraint of trade is merely ancillary. . ." (6 R. C. L. | 195, p. 790, Emphasis ours.)

From Corpus Juris, we quote the following:

"The covenant or contract by which the restraint is imposed must be incidental to and in support of another contract or a sale by which the covenantee acquires some interest in the business needing protection. <u>Contracts which have for their object merely the removal of a rival and competitor in a business are unlawful under all circumstances.</u> . . . ." (13 C.J., | 420, p. 477. Emphasis ours.)

The latest offering by the same publishers, Corpus Juris Secundum, adheres to the rule announced in Corpus Juris:

"The validity of an agreement in restraint of trade is according to the trend of authority to be tested by its reasonableness with respect to the protection of the covenantee and the public interest involved, <u>and in all cases it is essential that the restrictive covenant be incidental to another lawful contract or sale involving some interest requiring the protection of the restraint.</u> Although it may in some cases continue after the sale of such interest. . . .

"<u>Restraining contract must be ancillary</u>. The covenant or contract by which the restraint

is imposed must be incidental to and in support
of another lawful contract or sale by which the
covenantee acquires some interest needing pro-
tection.  As is stated in ¶ 250 infra, <u>contracts
which have for their object merely the removal
of a rival and competitor in a business are un-
lawful under all circumstances. . . .</u>"  (17
C.J.S., ¶ 246, p. 627.  Emphasis ours.)

It would serve no useful purpose to list here the
many cases from other jurisdictions cited by the above au-
thorities.  These do not rest upon any construction of our
statutes, but appear to be convincing statements, showing
the status of the common law.  We shall proceed to discuss
some of the Texas cases arising from civil actions.

In the case of Comer v. Burton-Lingo Co., 24 Tex.
Civ. App. 251, 58 S. W. 969, an owner of a lumber business,
on the sale thereof to three firms engaged in the same busi-
ness, agreed not to re-enter such business in the city of
Cleburne, for a period of ten years.  The vendor resumed the
lumber business in Cleburne within the period embraced in
the contract.  The suit sought to restrain him from continu-
ing such business and for damages.  The answer of defendant
charged that plaintiff firms, being the only dealers in such
business in such place, combined to buy such business and
good will to prevent competition, and to control prices.
The court said if the plaintiffs entered into <u>a combination</u>
of their acts and capital to buy, and did buy the stock in
trade and good will of the defendant, and if the purpose
of the combination was to create or carry out restrictions
in trade or in the free pursuit of business, or to prevent
competition, it was prohibited by the anti-trust law. We
quote from the opinion of the court:

"The anti-trust law does not apply to the sale
of a business and the good will thereof, ac-
companied by an obligation on the part of the
seller not to resume business for a limited time
at a specified place, where the purchaser is a
single person or firm.  Gates v. Hooper (Tex. Sup.)
39 S. W. 1079; Erwin v. Hayden (Tex.  Civ. App.)
43 S. W. 611.  Does it apply to a combination of
two or more dealers to buy the stock and good will
of an opposition dealer for one of the purposes
prohibited by the statute?  The combination prohi-
bited by the law in force when the contract be-
fore us was entered into was the union or associa-
tion of the capital, skill, or acts of two or more
persons, firms, or corporations for the purpose of

doing either of the things denounced by the
statute.  If the combination is consummated,
and its purpose is unlawful, then it is im-
material as to whether it is reasonable from
a business standpoint, or as to how it will
affect the public.  The object of the statute
was to prohibit any combination having for its
 purpose the doing of either of the things
specified, without regard to the intention of
the parties, or of the immediate effect of the
combination on trade and commerce, as the power
arising from such combination was believed to
be dangerous to public interests.  Therefore
the legislature did not attempt to regulate
such combinations, but prohibited them entire-
ly.  . . . . ."

Crandall v. Scott, Tex. Civ. App., 161 S.W. 925, is a
case wherein plaintiff and two other concerns, who conducted
moving picture shows in Amarillo made an agreement by which
the others gave notes to plaintiff in consideration of his
ceasing business and agreeing that no showhouse except the
two operated by the makers of such notes should open in
Amarillo before a certain time; that if a theater of a cer-
tain standard should open within the time and operate for six
months, all of the notes maturing after the opening of the
new show should be void, and that if a showhouse should open
and run for less than such period, the notes should be void
for the time it was conducted.  Holding that there was such a
"combination" in restraint of trade as violated the anti-
trust law, the court refused to sanction the contract, declar-
ing it wholly void, notwithstanding a serious question as to
failure of defendants' pleadings to properly attack its
validity, the opinion reciting that the contract's illegality
was apparent from the record.  The case of Comer v. Burton-
Lingo, supra, was cited with approval.

The court held the very language contained in the first
and seventh numbered paragraphs of what is now Article 1632,
Penal Code, was violated by the combination entering into the
purported contract.

In Smith v. Kousiakis, Tex. Civ. App., 172 S.W. 586,
plaintiff entered into an agreement with defendants that for
a valuable consideration defendants would not operate, or
permit lessees to operate a lunch stand upon certain premises
for a period of two years.  A written memorandum was executed
by the parties.  Thereafter the premises were sublet for a
lunch stand.  This occasioned the suit for an injunction, which
was granted by the lower court.  The court of Civil Appeals

reversed the case, a majority of the court holding the purported contract void, because in violation of the first and seventh numbered paragraphs of Article 7796, Revised Civil Statutes, 1911. This article is in the identical language of our present Article 1632, Penal Code, supra. The third justice doubted the applicability of the anti-trust statute, but concurred in the result because of the common law rule limiting such agreements to covenants ancillary to a lawful contract such as mentioned in the quotations from Williston, Ruling Case Law, Corpus Juris, etc., hereinbefore set out by us.

We next consider the case of Robinson v. Levermann, Tex. Civ. App., 175 S. W. 160, writ of error refused, 185 S.W. xv. Robinson's firm and two others were engaged in the business of selling paints, wallpaper, oils and varnishes in the city of Corsicana, Texas. Robinson's firm sold its stock of merchandise to the two competitors, with agreement that the sellers would not engage in such business in such city so long as the buyers were engaged therein. Robinson left Corsicana for a time, but returned and resumed the same character of business he had theretofore followed and in competition with said parties to the alleged contract. Suit was for damages and an injunction restraining Robinson from carrying on the business. The court held the contract illegal and void, as indicating a <u>combination</u> in contravention of language in the civil statutes, the same as used in what is now numbered paragraphs 1, 3 and 7 of Article 1632, Penal Code. See p. 162 of the opinion, 175 S. W. 160, supra.

We recognize the seemingly anomolous situation created by the language of the statute as interpreted and construed by our courts as shown by the excerpt already quoted herein from Comer v. Burton-Lingo Co. and the other cases supra. Nevertheless, it appears that the decisions in civil suits are conclusive that the anti-trust law does not apply to the sale of a business and the good will thereof, accompanied by an obligation on the part of the seller not to resume business for a limited time at a specified place, where the purchaser is a single person or firm; whereas, it does apply to a <u>combination of two or more dealers</u> when such <u>combination</u> is for one of the purposes enumerated and prohibited by the statute. See Comer v. Burton-Lingo Co., supra; Langever v. United Advertising Corporation, Tex. Civ. App., 258 S.W. 856; Malakoff Gin Co. v. Riddlesperger, Tex. Civ. App., 133 S.W. 519; Ibid, Supreme Court, 192 S.W. 530; Linen Service Corporation v. Myres, Tex. Civ. App., 128 S.W. (2d) 850; State v. Racine Sattley Co., Tex. Civ. App., 134 S.W. 400, and many others grouped in 28 Tex. Digest, 220-222.

An interesting and informative discussion of the entire subject of Texas anti-trust legislation and court decisions construing it may be found in the Texas Law Review. 3 Tex. Law Review 335, 4 ibid. 129, 15 ibid. 293. The author of the last treatise cited declares that "the cases involving convenants not to compete are decided entirely in accordance with common law principles." See note, 15 Tex. Law Rev. 301, from which we quote:

> ". . . That is, they are upheld if incident to the sale of a business or a contract of employment if reasonably limited in time and space ....... The fact that the early cases made use of a tortured construction of the word 'combination' in the statute in order to reach this result (Gates v. Hooper, 81 Tex. 159, 16 S.W. 744 (1891) ) is, of course, immaterial in this connection. . . . ."

The Texas Supreme Court case of Gates v. Hooper is incorrectly cited by Professor Nutting, the correct reference being 90 Tex. 563, 39 S.W. 1079. The volumes indicated show the report of Welsh v. Morris, a similar case. Nevertheless, Gates v. Hooper is treated as the leading case by many courts and text writers for the principle that there can be no "combination" unless two or more unite or associate "capital, skill or acts" for one of the prohibited purposes, and that a restriction imposed by a single vendee is to be treated as lawful and therefore enforceable by the equitable arm of the law, despite the anti-trust statutes. Reference to Sheppard's Southwestern Reporter Citations show the case to have been listed as authority in no less than 44 civil cases to and including the pronouncement in Houston Credit Sales Co. v. English, Tex. Civ. App., 139 S.W. (2d) 163. No effort on the part of any court to overrule Gates v. Hooper has been found, though we have made exhaustive search.

So it may be confidently stated that as seen through the eyes of the civil courts of this State, assuming the facts submitted by you as proven, i.e., that the contract resulted from a "combination" of Thaten and Beasley, as that term has been judicially defined, the same would be considered void and unenforceable, condemned by Article 7426, Revised Civil Statutes.

Would the Court of Criminal Appeals follow the civil courts, and upon a sufficient quantum of proof of such combination, affirm a conviction?

It is not the prerogative of this department to anti-

cipate or forecast such contingency. We do not wish to appear so presumptious as to draw any inference that we are attempting in the slightest degree to invade the field reserved exclusively for the Court of Criminal Appeals. We are cognizant of the provisions of Article 4399, Revised Civil Statutes, however - that the Attorney General shall advise the several district attorneys in the prosecution and defense of all actions in the district or inferior courts, whenever requested and when, as in the instant case, the attorney has investigated the question and submitted a brief.

In this connection, we point out the fact that while neither the Supreme Court and the various Courts of Civil Appeals on the one hand, nor the Court of Criminal Appeals is in any manner subordinate one to the other, it appears that respect will always be given to the decision of the court which gives the first interpretation to language of a statute of such nature that it might be properly construed by either court. See 11 Tex. Jur. 853, 3104; Redman v. State, 67 Tex. Cr. R. 374, 149 S. W. 670; Ex parte Mussett, 72 Tex. Cr. R. 487, 162 S. W. 846; Lossing v. Hughes, Tex. Civ. App., 244 S.W. 556, 561.

We therefore respectfully advise you that it is our opinion that a prosecution will lie for a violation of Article 1632, Penal Code, supra, assuming the proof available to sustain the facts as stated in your letter and accompanying brief.

You are correct in your reference to the punishment upon conviction; Article 1635, Penal Code, would control and a violator of Article 1632 might be confined in the penitentiary for not less than two nor more than ten years.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Benjamin Woodall
Benjamin Woodall
Assistant

BW:GO:wc

APPROVED OCT 25, 1949
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman