POTOMAC FIRE INS. CO. et al. v. STATE.
(No. 7333.)

Court of Civil Appeals of Texas. Austin.
March 20, 1929.

Rehearing Denied June 12, 1929.

Geo. C. Gaines, Jr., of Houston, for appellants.

Claude Pollard, Atty. Gen., and Brann Fuller, Asst. Atty. Gen., for the State.

BLAIR, J. By this suit appellee, the state of .Texas, obtained an injunction against appellant insurance companies, perpetually restraining, as being violative of the anti-trust laws of Texas, the carrying out and performance of, or doing any act or failing to do any act under, appellants' following contract:

"In view of the ever mounting increase in insurance expenses, and in view of the fact that already approximately sixty per cent of the total expenses of insurance companies is the local agents' commissions, and in view of the fact that certain fire insurance companies, doing business in Texas, are endeavoring to crush and destroy competition by bribing insurance agents with excessive commissions to take the business away from competing com-

panies, and thus finally create a monopoly for themselves, and in view of the fact that said agents' commissions are paid by the public, thus laying a heavy tribute upon the premium payers by carrying out the policy of destroying competition, and in view of the fact that excessive commissions create a horde of solicitors who have no responsibility towards the companies and none toward the public, who undermine the soundness of underwriting and destroy the present local agency plan of doing business, and in view of the fact that the local agent is necessary for rendering service to the citizens and in view of the fact that a commission war is imminent and threatening, which must necessarily result in increased rates to the public and in the ultimate destruction to the local agent himself, by driving the business to the mutual companies and to the inter insurers, therefore, for the purpose of preserving reasonable rates to the public in Texas and the local agency occupation, and for our own protection, the Potomac Fire Insurance Company of Washington, D. C., and the Merchants' & Manufacturers' Fire Insurance Company of Newark, N. J., hereby agree that beginning on July 1st, 1928, they will limit the local agency commission to twenty per cent. on fire insurance business written by those companies in the state of Texas, and that they will not do business through an agent who accepts more than a commission of twenty per cent., from any company on fire insurance business written in the state of Texas."

The agreed stipulations are as follows:

"Capital stock fire insurance companies operating in Texas universally conduct their business upon what is known as the 'agency plan,' which is to say: Each company appoints throughout the state persons to represent it in the acquisition and writing of business, each of which agents has the right to select the business for the company and to issue its policy of insurance, binding the company upon the risk. Every agent, without material exception, represents more than one company, usually several companies, for a number of good reasons. When an agent has solicited and secured an application for insurance from a property owner, the agent selects one of the companies which he represents, and 'places' or 'writes' the risk in the company so selected by him.

"All companies without exception compensate their agents by paying or allowing them a commission upon the business which the agents give them. Certain companies, of which the defendants herein are two, uniformly allow their agents certain commissions upon what is known as a 'graded scale,' which by way of illustration provides for 15% of the premium collected upon certain specified classes of risks, 20% on other classes and 25% on others. Certain other companies pay their agents commissions for business given them in excess of the so-called graded scale.

"The experience of the defendants indicates that in those cases where agents are representing companies, some of which pay the graded scale and some of which pay the excess commissions, the agents place the more desirable risks in those companies which pay the excess commission and place the less desirable risks in those paying the graded scale. While the defendants carry with satisfaction a fair share of undesirable risks, good business and sound underwriting practice demands that they also have a fair share of the more desirable policies, since good insurance depends upon a wide and representative spread of hazards. The defendants have also found that there are so many of the agents in the business in the state who represent both classes of carriers, that they (defendants) are satisfied that they are not now getting this fair and necessary distribution of good and bad risks.

"It is admitted by all parties to this cause that defendants entered into the contract and agreement above set out with the belief that the interest of defendants' business justified and demanded the making of said agreement looking toward a 'segregated' agency where all companies represented by an agent would pay him the same scale of commissions; and with the idea that other companies would join in the agreement to such an extent that ultimately every agent will receive the same remuneration from every company that he represents. In this condition of affairs an agent would have no incentive to prefer one company over another with reference to the class of risks written."

In addition to these agreed facts, Hon. R. B. Cousins, chairman of the State Insurance Commission, testified that the commission fixed and promulgated maximum rates of premiums to be charged and collected for insurance based upon several items of expenses necessary to the insurance business, the item of agent's commissions being the largest single item going to make up the total expenses. Witness further testified:

"In calculating these rates it is the desire of the board to arrive at reasonable and equitable fire insurance rates in this state. * * * The formula at which we aim will provide a premium dollar, out of which 55 cents will be used for payment of losses, 40 cents for operating expenses, and 5 cents either for company reserve or profit. That, roughly speaking, is our formula that is in use. One of the items that go to make up this 40 cents expense account is the item of agents' commission. * * * We take the companies' figures for their expenditures as reasonable and any variation in the agents' commission item, unless it appears to be absolutely extravagant, would be accepted as reasonable and would be taken into account in fixing fire insurance rates. * * * Of course, if they did raise the rates which they pay their agents so it increased the amount of money

that they paid out on the whole as expenses it might be necessary for us to raise the rates in order to give them the money with which to pay. In the final analysis, it would be necessary for them to show us that this was necessary."

Whether this contract of appellants is violative of the following provisions of article 7426, is the sole question on this appeal:

"A 'trust' is a combination of * * * skill or acts by two or more * * * corporations, * * * for either, any or all of the following purposes:

"1. To create, or which may tend to create, or carry out restrictions * * * in the free pursuit of any business authorized or permitted by laws of this state.

"2. To fix, maintain, increase or reduce * * * the cost of insurance. * * *

"3. To prevent or lessen competition in the * * * business of insurance. * * *

"4. To fix or maintain any standard or figure whereby the * * * cost of * * * insurance, * * * shall be in any manner affected, controlled or established.

"5. To make * * * any contract of insurance at a price below a common standard or figure, or by which they shall agree in any manner to keep the price of * * * insurance, * * * at a fixed or graded figure, or by which they shall in any manner affect or maintain the * * * cost of * * * insurance, or * * * to preclude a free and unrestricted competition among themselves, or others in the * * * business of * * * insurance * * * or by which they shall agree * * * to combine or unite any interest they may have in connection with the * * * charge * * * insurance * * * whereby its price * * * might be in any manner affected."

Appellants first contend that when standing alone, section 1 of the article is broad enough to include the insurance business, but that that section is limited and controlled by other sections of the article which deal specifically with illegal combinations relating to the insurance business. We have reached the conclusion that the contract is in violation of sections 2, 3, 4, and 5 of the article, which relate specifically to the insurance business, and we therefore pass the question raised as not material.

■ The second proposition is that appellants' contract in regard to expenses of agents' commissions does not and cannot affect the rates of premiums to be charged and collected for insurance, because exclusive power and authority to fix such rates is vested by articles 4878, 4879, 4884, 4885, and 4893 in the State Insurance Commission. These statutes vest in the State Insurance Commission "the sole and exclusive power * * * to fix * * * the rates of premiums to be charged and collected," and provide the manner of obtaining information to effectuate

that purpose. They forbid the collection of rates in excess of the "maximum" so fixed, and declare that the rates of the commission must be reasonable; that all items and elements considered in fixing the maximum rates of premiums must be shown in the published schedules; that after 30 days' notice the commission may alter, modify, etc., any rate fixed by it; and that an appeal to the courts will lie from any decision of the commission. Appellants admit that they have no authority for the proposition, but cite as being analogous the case of State of Texas v. Shippers' Compress & Warehouse Co., 95 Tex. 603, 69 S. W. 58, which merely holds that it would be practically impossible for a purchaser of a number of cotton compresses throughout the state to restrain competition, because the Railroad Commission had fixed the price to be paid by railroads for compressing, and had promulgated a rule that all cotton must be compressed at nearest compress on direct line of railroad transporting the cotton. But no such state of facts or conditions exists here, and that case furnishes no rule of analogy for this case. While it is true that the State Insurance Commission "always" takes into consideration agents' commissions as a necessary item of expense in the business of insurance, still the evidence is undisputed that the commission has not undertaken, in the exercise of its exclusive power and authority to fix maximum rates of premiums which may be charged and collected for fire insurance, to fix such agents' commissions at 20 per cent. of the premiums on business written, which appellants' contract undertakes to do. At most, the commission has recognized agents' commissions as a necessary item of expense in the business of insurance, and has accepted as reasonable the "graded scale" commissions paid by some companies, and also as reasonable commissions in excess of the so-called graded scale paid by other companies. We must, therefore, conclude that, until the amount of agents' commissions is fixed as a necessary item of expense in the business of insurance by some authority of law, the same remains an item of expense with reference to which insurance companies may legitimately compete, and the rule announced in the case cited, where the item of expense for compressing cotton was fixed by the Railroad Commission, is not applicable.

Nor does the case cited furnish any analogy for this case on the question of restraint of competition. There one purchaser bought several compresses, which could not compete because of a regulation of the Railroad Commission that cotton must be compressed at the first compress on direct line of transportation. In this case two insurance corporations have not only contracted to fix an item of expense which necessarily and naturally affects the cost of insurance, but have also contracted to exclude, as far as possible, certain

of their competitors in the business of insurance, which acts are specifically prohibited by statute.

Appellants, however, contend in this connection that the agreement does not violate any provision of sections 2, 4, and 5, article 7426, as a matter of fact. We do not sustain the contention. The appellants are foreign corporations, authorized to do business in Texas. The contract recites that beginning July 1, 1928, appellants "will limit the local agency commission to twenty per cent. of fire insurance business written by those companies in the state of Texas, and that they will not do business through an agent who accepts more than a commission of twenty per cent. from any company on fire insurance business written in the state of Texas." The contract and the undisputed evidence either by express terms or by reasonable inference show the agreement to have been made to effectuate the following purposes:

(1) "For the purpose of preserving reasonable rates to the public in Texas, and the local agency occupation, and for our own protection."

(2) For the purpose of creating a combination "where all companies represented by an agent would pay him the same scale of commissions * * * and with the idea that other companies would join in the agreement to such an extent that ultimately every agent will receive the same remuneration from every company that he represents."

(3) For the purpose of agreeing to pay their local agents stipulated commissions.

(4) For the purpose of agreeing to prohibit their agents from representing any competitor paying a larger commission than that fixed in the contract between appellants, so that their agents "would have no incentive to prefer one company over another."

(5) For the purpose of preventing an "imminent and threatening * * * commission war" in Texas, which would necessarily "increase insurance rates to the public."

(6) For the purpose of eliminating competitors who pay "excess commissions," and who seek to "crush and destroy competition by bribing insurance agents with excessive commissions."

■■■ We are clear in the view that, if appellants have the right to enter into an agreement whereby they can fix the amount of any item of expense which is "always" considered by the commission in fixing and determining the maximum rates of premiums, they could ultimately fix, maintain, affect, establish, reduce, or control the cost of insurance in this state. The contract speaks for itself in this respect. It declares that the agreement is executed "for the purpose of preserving reasonable rates to the public in Texas." The rates referred to relate to the total cost or expenses of the business of insurance, which, according to recitations in the contract, are on "the ever-mounting increase." To preserve rates necessarily means to fix, maintain, establish, limit, or control them. To preserve "reasonable rates" necessarily means that the amount has been or will be fixed or determined in accordance with some standard or figure. To effectuate the purpose of preserving reasonable rates to the public the contract declares that a standard or figure of 20 per cent. of the premiums on all business written by the agents shall be paid, which under the admitted facts is less than is paid by the companies paying the "graded scale" commissions on certain classes of risks, or by the companies paying commissions in excess of the so-called graded scale, but more than is paid on certain other classes of risks. The contract also recites that it is executed for the purpose of preventing an "imminent and threatening * * * commission war" in Texas, which would necessarily "increase insurance rates to the public." It is admitted that the agreement was entered into in the hope "and with the idea that other companies would join in the agreement to such an extent that ultimately every agent will receive the same remuneration from every company that he represents." The insurance commissioner testified that the expense of agents' commissions was the largest single item of expense in the business of insurance; that the State Insurance Commission always took the expense of agents' commissions into consideration in fixing the maximum rates of premiums to be charged and collected for insurance; and that, if companies raised or increased the amount of agents' commissions, the rates of premiums as a whole might have to be raised in order to give companies the money with which to pay such commissions. So, from this analysis of the purposes of the contract and the admitted facts, it is clear beyond dispute that these appellant insurance corporations have entered into a contract, agreement, or combination which necessarily and naturally tends to fix, maintain, affect, increase, or reduce the cost of insurance, and which necessarily and naturally tends to fix and maintain a standard or figure whereby the cost of insurance is affected, established and controlled; and is a contract whereby the parties necessarily agree to keep the price of insurance at a fixed or graded figure, and affects or maintains the cost of insurance and is therefore in violation of sections 2, 4, and 5 of article 7426. That a contract necessarily and naturally tends to so fix, etc., the costs of insurance, is the test according to the following authorities, to be applied to cases of this character: Texas Standard Oil Co. v. Adoue, 83 Tex. 650, 19 S. W. 274, 15 L. R. A. 598, 29 Am. St. Rep. 690; Comer v. Burton-Lingo Co., 24 Tex. Civ. App. 251, 58 S. W. 969; Houck v. Anheuser-Busch Brewing Ass'n, 88 Tex. 184, 30 S. W. 869; State v. Racine Sattley Co., 63 Tex. Civ. App. 663, 134 S. W. 400; San Antonio

934

Gas Co. v. State, 22 Tex. Civ. App. 118, 54 S. W. 289; Walter A. Wood Mowing & Reaping Machine Co. v. Hardware Co., 75 S. C. 378, 55 S. E. 973, 9 L. R. A. (N. S.) 501, 9 Ann. Cas. 902; Yazoo & M. V. R. Co. v. Searles, 85 Miss. 520, 37 So. 939, 68 L. R. A. 715.

■ The statute simply prohibits any agreement between two or more insurance companies doing business in this state, which necessarily and naturally tends to fix, maintain, affect, increase, reduce, establish or control the cost of insurance, and there is no merit to the contention that the agreement between appellants is a mere detail of their business and only incidentally affects the cost of insurance. If it affects in any manner the cost of insurance, it is prohibited by the statute.

■ By their third proposition appellants contend that the contract, fixing a maximum rate to be paid local agents and binding themselves not to employ any agent who accepts a higher rate of commission from any other company, does not prevent or lessen competition in the business of insurance as is inhibited by section 3 of article 7426. We have reached the conclusion that the agreement not only prevents or lessens competition in the business of insurance, as is inhibited by section 3, but that it also violates that portion of section 5 of the article, which reads: "To make, enter into, maintain, execute or carry out any contract * * * between them or themselves and others, to preclude a free and unrestricted competition among themselves or others in the * * * business of * * * insurance."

■ It is clear beyond dispute that one purpose of the contract was to eliminate as competitors all insurance companies who were paying a larger agents' commission than that stipulated in the agreement, and who were thereby "endeavoring to crush and destroy competition by bribing insurance agents with excessive commissions to take the business away from competing companies." The agreed facts show that "for a number of good reasons" agents usually represent several companies, and that such agents have the authority to select the company to write the insurance. There is nothing unnatural or wrong with an agent who would place an application for insurance with the company that paid him the largest commissions on the business; and the fact that appellants were unable to compete with other companies in this respect furnishes no reason or excuse for the agreement between them, nor does the statute inhibiting agreements between two or more insurance companies to prevent or lessen, or to preclude, a free and unrestricted competition in the business of insurance, recognize any such reason or excuse, but prohibits such agreements entirely. If the competition is unfair in this respect, appellants' remedy certainly does not lie in an illegal combination or agreement to meet such competition.

■ Appellants also agreed as between themselves not to compete with reference to the matter of expense relating to agents' commissions, and agreed to pay agents "the same scale of commissions, and with the idea that other companies would join in the agreement to such an extent that ultimately every agent will receive the same remuneration from every company that he represents," and so that "an agent would have no incentive to prefer one company over another." We therefore conclude that the contract and the undisputed evidence show beyond question that the necessary and natural tendency of the agreement was to prevent and lessen competition in the business of insurance, and that the necessary and natural tendency of the agreement was to preclude a free and unrestricted competition in the business of insurance as between appellants themselves, as between appellants and their agents, and as between appellants and all companies paying larger commissions than that stipulated in the agreement.

■■ But appellants contend in this connection that there are certain recognized combinations which do not fall within the provisions of the statute, such as (1) contracts of agency, where the agent is prohibited either generally or to a limited extent, from dealing for himself or others besides his principal; (2) contracts for the sale of a business, where the seller agrees not to engage in a competing business within a limited time or territory; (3) contracts of lease where lessee binds himself as regards the leased premises; and (4) contracts in which an exclusive right or privilege is granted upon the property or premises of the grantor. In other words, appellants seek to apply the reasonableness of restraint in trade rule to this case. However, that rule and the recognized combinations relied upon by appellants as being analogous here are clearly not so, and have no application to this case, for the following reasons:

1. Because the contract is not one between a principal and agent to prohibit or limit the agent's dealings, or incident to the agent's employment, but is a combination and an agreement between two insurance corporations, whereby they bind themselves not to employ a certain character of agency, which agreement, if carried out, would necessarily and naturally tend to violate the sections of the article in question. The same is true with reference to the other recognized contracts in reasonable restraint of trade. No rule is better established than the one that contracts which are recognized as being in reasonable restraint of trade must be ancillary to and in support of another contract. Or, as is stated in 13 C. J. 477, § 420, cc: "The covenant or contract by which the restraint is imposed must be incidental to and in support of another contract or a sale by which the covenantee acquires some interest in the business needing protection. Contracts which have for their object

merely the removal of a rival and competitor in a business are unlawful under all circumstances." See also 6 R. C. L. 790, § 195, and cases there cited in footnotes 7 and 8.

█ The purpose of appellants' contract was to fix the rate to be paid their agents, and to agree not to employ an agent who represented a certain class of their competitors. The contract was therefore not incidental to or in support of any other contract, but had for its object the fixing of the rates to be paid insurance agents, and the removal of certain rivals and competitors in the business of insurance. It was held in the case of Queen Insurance Co. v. State, 86 Tex. 261, 24 S. W. 399, 22 L. R. A. 483, that: "A combination between two or more insurance companies to increase their rates or to diminish the rates to be paid to their agents, is in a general sense a combination in restraint of trade."

That case was written before the enactment of the provisions of article 7426, supra, relating to the business of insurance, and the court therefore held that, although such contract was a combination in restraint of trade, still it was not unlawful, because the antitrust statutes as they then existed did not embrace the business of insurance. The statutes now embrace the insurance business, and the conclusion then reached by the Supreme Court that such contracts or combinations were in restraint of trade is now applicable.

█ 2. It is admitted by appellants that the insurance business is of vital importance and interest to the public, and that it has been made a quasi public, if not a public, undertaking by the statutes creating the State Insurance Commission as an impartial body between the public and insurance companies doing business in this state. The great weight of authority holds that the test of reasonableness of the restraint in trade does not apply "when a contract in restraint of trade is injurious to the public interests." 13 C. J. 478, § 422. And, continuing, this authority also states at page 480 (section 423) ff: "The rule inhibiting interference with public interests also invalidates contracts, the tendency of which is to lessen competition or to raise the price of commodities. This rule is not restricted to contracts affecting articles of prime necessity, and the validity of the contract is not to be tested by what the parties have done under it."

In the case of U. S. v. Addyston Pipe & Steel Co. (C. C. A.) 85 F. 271, 46 L. R. A. 132, the court say: "It is true that there are some cases in which the courts, mistaking, as we conceive, the proper limits of the relaxation of the rules for determining the unreasonableness of restraints of trade, have set sail on a sea of doubt, and have assumed the power to say in respect to contracts which have no other purpose and no other consideration on either side than the mutual restraint of the parties, how much restraint of competition is in the public interest, and how much is not. The manifest danger in the administration of justice according to so shifting, vague, and indeterminate a standard would seem to be a strong reason against adopting it." 13 C. J. 481.

Some modern authorities make a distinction between contracts or combinations in restraint of trade and contracts or combinations in restraint of competition in trade. Concerning this the authority 19 R. C. L. 36, § 20, makes the following comment: "Many of the later authorities draw a distinction between contracts in 'restraint of trade,' as that phrase was understood in the early history of the common law, and contracts in 'restraint of competition,' and also in restraint of trade, as understood in modern times. The distinction, however, is scarcely practical, because whatever restrains trade prevents competition, and whatever prevents competition in trade necessarily restrains trade."

Our purpose in raising this question, however, is to show that the reasons for holding certain contracts to be in restraint of trade may be equally as well applied to contracts in restraint of competition in trade, and that the cases herein cited dealing with contracts in restraint of trade on principle support our conclusions in this case. We do not undertake to determine, as being immaterial to a decision in this case, whether the Legislature intended, when it enacted article 7426, to draw such distinction, and to thereby prohibit as separate and distinct acts or offenses contracts in restraint of trade as well as contracts in restraint of competition in trade. It may be noted here that section 1 of the article prohibits the first class of contracts, while sections 3 and 5 particularly prohibit the latter class of contracts. Sections 2 and 4 of the article, relating to contracts to fix, maintain, etc., the cost of insurance, and to fix or maintain any standard or figure whereby the cost of insurance is in any manner affected, controlled, or established, may apply equally as well to contracts in restraint of trade as to contracts in restraint of competition, because price or rate fixing has been uniformly condemned as being both in restraint of trade and in restraint of competition in trade. And while some courts apply the rule of reasonable restraint in trade to certain classes of contracts, even where the public is interested, the great weight of authority does not apply the reasonable restraint rule to contracts in restraint of competition in trade, where the public is interested or affected. Our statute herein construed prohibits entirely contracts or combinations between insurance corporations which in any manner affect, control, or establish, etc. the cost of insurance.

We find no error in the trial court's judgment, and it is affirmed.

Affirmed.