IN THE SUPREME COURT OF TEXAS
 
════════════
No. 09-0558
════════════
 
Marsh USA 
Inc. and Marsh & McLennan Companies, Inc.,
Petitioners,
 
v.
 
Rex Cook, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Fifth District of 
Texas
════════════════════════════════════════════════════
 
Argued September 
16, 2010
 
 
            
Justice Green, joined by 
Chief Justice Jefferson and Justice Lehrmann, dissenting.
 
 
            
The Court today decides that a non-solicitation agreement extracted from 
an employee in exchange for stock options can be enforceable solely because the 
employer’s goodwill, which purportedly benefits from the gift of stock options, 
is an interest worthy of protection. ___ S.W.3d ___, 
___. This decision is directly at odds with our holding in Light v. 
Centel Cellular Co., 883 S.W.2d 642 (Tex. 1994), 
which required that an employer’s consideration for a covenant not to compete 
must give rise to an interest in restraining trade. Yet the Court refuses to say 
that it is overruling Light. While I agree that goodwill is an interest 
worthy of protection—the Covenants Not to Compete Act expressly refers to 
goodwill as a protectable interest[1]—the enforceability of this covenant does 
not hinge upon that determination. It hinges upon consideration—whether 
stock options given to an employee can justify a restraint of trade. The Act 
mentions nothing about stock options, and equating stock options with goodwill 
creates a rule by which any financial incentive given to an employee could 
justify a covenant not to compete. Our law prior to Light, and since, has 
applied the rule that covenants not to compete must be ancillary to an exchange 
of valuable consideration that justifies or necessitates a restraint of trade. 
See, e.g., Mann Frankfort Stein & Lipp 
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 849 (Tex. 2009) (holding 
that unless the consideration given by the employer gives rise to an interest in 
restraining competition and the covenant is designed “to enforce the employee’s 
consideration or return promise[,] . . . the covenant is a naked restraint of 
trade and unenforceable”); Justin Belt Co. v. Yost, 502 S.W.2d 681, 683 
(Tex. 1973) (holding that a restraint of trade must be “ancillary to and in 
support of another contract”). Because today’s decision nullifies that 
requirement, and favors the enforcement of covenants not to compete based on 
financial incentives (something we’ve repeatedly held is unacceptable), I 
respectfully dissent.
            
The Court today abandons our previous application of the “ancillary to or 
part of” requirement codified in Texas Business and Commerce Code § 15.50(a) and 
instead defines the phrase as “reasonably related to.” See ___ S.W.3d at 
___. If the Legislature intended for enforceability of a covenant not to compete 
to depend upon whether the covenant was “reasonably related to an otherwise 
enforceable agreement,” the Legislature could have easily chosen such language. 
Instead, the Legislature used a phrase from the common law prior to Light. See DeSantis v. 
Wackenhut Corp., 793 S.W.2d 670, 681–82 (Tex. 1990) (explaining the 
established common law principles governing covenants not to compete); Restatement (Second) of Contracts §§ 
187, 188 (1981). Light’s application of the consideration prong of the 
statute, far from being a departure from the common law, seems consistent with 
the “relatively well established” common law as expressed in DeSantis, where we held that an enforceable covenant 
not to compete must be “ancillary to an otherwise valid transaction or 
relationship,”[2] and that under this requirement, a 
“restraint on competition is unreasonable unless it is part of and subsidiary to 
an otherwise valid transaction or relationship which gives rise to an 
interest worthy of protection.” DeSantis, 793 
S.W.2d at 681–82 (emphasis added). In Light, we held that under 
Texas Business and Commerce Code 
§ 15.50, in order for a covenant to be “ancillary to an otherwise 
enforceable agreement”: (1) “the consideration given by the employer in the 
otherwise enforceable agreement must give rise to the employer’s interest 
in restraining the employee from competing; and (2) the covenant must be 
designed to enforce the employee’s consideration or return promise in the 
otherwise enforceable agreement.” 883 S.W.2d at 647 (emphasis added). The Court 
today holds that “Light diverged from the common law definition of ‘give 
rise’ as articulated in DeSantis,” stating that 
“[r]ather than requiring that the otherwise 
enforceable agreement give rise to ‘an interest worthy of protection,’ 
Light imposed a stricter requirement: that the consideration give rise to 
‘the employer’s interest in restraining the employee from competing.’” ___ S.W.3d at ___ (emphasis omitted). I fail to see the 
difference between “an interest worthy of protection” (in this case, Marsh’s 
goodwill), and “the employer’s interest in restraining the employee from 
competing” (in this case, Marsh’s protection of goodwill). I also fail to see 
how the Court can defend the “give rise” language of DeSantis and overrule, or “modify,” the “give rise” 
language as used in Light, which relied on the language of DeSantis. See Light, 883 
S.W.2d at 647. As the Court points out, the Act was intended to codify 
the common law;[3] therefore, the Act should also 
incorporate our common law interpretations of the term “ancillary to or part 
of.” The Court’s main problem with the “give rise” standard appears to be this: 
Stock options do not give rise to an interest in restraining trade, and 
therefore, the give rise standard cannot accompany the enforcement of a covenant 
based on stock options.
            
Goodwill is not the dispute in this case. The dispute is whether the 
consideration given to allegedly protect the employer’s goodwill gives 
rise to an interest in restraining competition. There is no evidence in the 
record of whether Cook actually created goodwill for Marsh or whether he used 
any goodwill in competition with Marsh, circumstances remarkably similar to 
DeSantis. See DeSantis, 793 S.W.2d at 
683–84.[4] Any financial incentive given to an 
employee can arguably motivate the employee to increase his employer’s goodwill, 
and every employee, if he performs his job as expected, creates goodwill for his 
employer. If any financial incentive that can encourage an employee to create 
more goodwill can satisfy the consideration prong of the Act, then we might as 
well ignore the consideration requirement all together. Under the Court’s 
reasoning, a raise, a bonus, or even a salary could support an enforceable 
covenant.
            
Noticeably missing in § 15.50(a) is language enforcing a covenant 
ancillary to an employment “relationship,” which is the language of the 
Restatement. See Restatement 
(Second) of Contracts § 188 (1981); Sheshunoff, 209 S.W.3d at 653–54 (tracking the 
evolution of the Act and how the Legislature rejected a version that would have 
enforced covenants “ancillary to an otherwise valid transaction or 
relationship” (emphasis added)). A mere employment relationship is not 
enough under the statute, which requires a separate enforceable agreement, but 
under today’s ruling, it very well could be. See Tex. Bus. & Com. Code 
§ 15.50(a). Financial 
compensation accompanies virtually every form of employment.[5] Under the Court’s ruling, the otherwise 
enforceable agreement could well be an agreement as to compensation. The 
Legislature expressly decided there must be an otherwise enforceable 
transaction, and in DeSantis and 
Light, we held that the transaction itself needs to create an interest 
worthy of protection and in restraining trade, or else the covenant is an 
unenforceable naked restraint of trade. See Light, 883 
S.W.2d at 647; DeSantis, 793 S.W.2d 682 
(referring to “unreasonable” restraints on competition as those that are not 
“part of and subsidiary to an otherwise valid transaction or relationship which 
gives rise to an interest worthy of protection”). To argue that Cook 
created goodwill for Marsh that he would not have created absent stock options 
is not only incapable of being proven, but blurs the true issue. The true issue 
is that Texas courts have stated time and again that an employer cannot 
buy a covenant not to compete, and the Court’s decision allows Marsh and 
other employers to do exactly that.[6]
            
The Court cannot rely on the second prong of § 15.50(a) to ensure that 
covenants which are “unreasonable” will not be enforced. Under the express 
language of the statute, only the first prong—the consideration prong—determines 
whether covenants are enforceable, while reasonableness defines only the 
extent to which they are enforceable. Tex. Bus. & Com. Code 
§§ 15.50(a), 15.51(c) (stating that “[i]f 
the covenant is found to be ancillary to or part of an otherwise enforceable 
agreement . . . but contains limitations . . . that are not reasonable and 
impose a greater restraint than is necessary,” then the court “shall reform the 
covenant”). Therefore, the only method by which a covenant is unenforceable as a 
matter of law is when it is not ancillary to or part of an otherwise enforceable 
agreement. Despite the dicta of Sheshunoff 
defining reasonableness as the core inquiry in that case, the consideration 
prong remains an equally crucial inquiry under the Act, and its application is 
rendered meaningless by the Court’s decision to concoct a new, broad definition 
of “ancillary or part of” as “reasonably related to.”
            
The Legislature has not clarified or altered the meaning of the term 
“ancillary” since the Court defined it in Light seventeen years ago. 
Stare decisis applies with greater force to statutory 
construction for this very reason. Sw. Bell Tel. Co. v. Mitchell, 276 
S.W.3d 443, 447 (Tex. 2008) (“‘[I]n the area of statutory construction, the 
doctrine of stare decisis has its greatest force’ 
because the Legislature can rectify a court’s mistake, and if the Legislature 
does not do so, there is little reason for the court to reconsider whether its 
decision was correct.” (quoting Marmon v. Mustang Aviation, Inc., 430 
S.W.2d 182, 186 (Tex.1968))). If Legislative intent were thwarted by our 
decision in Light, as the Court claims, the Legislature could have 
clarified its meaning of “ancillary to or part of” at some point during the past 
seventeen years.[7] “It is a firmly established statutory 
construction rule that once appellate courts construe a statute and the 
Legislature re-enacts or codifies that statute without substantial change, we 
presume that the Legislature has adopted the judicial interpretation.” 
Grapevine Excavation, Inc. v. Md. Lloyds, 35 S.W.3d 1, 5 (Tex. 
2000) (“Stare decisis has its greatest force in 
statutory construction cases.”). The Legislature has amended other portions of 
the Covenants Not To Compete Act three times in the seventeen years since 
Light and has not changed the wording or meaning of the phrase “ancillary 
to or part of” since our application of the phrase in Light. Act of May 
26, 1999, 76th Leg., R.S., ch. 1574, § 1, 1999 Tex. 
Gen. Laws 5408, 5408 (adding subsection (b) concerning physicians and covenants 
not to compete); Act of May 22, 2001, 77th Leg., R.S., ch. 1420, § 14.729, 2001 Tex. Gen. Laws 4210, 4515 (amending 
subsection (b)); Act of May 26, 2009, 81st Leg., R.S., ch. 971, § 1, 2009 Tex. Gen. Laws 2565, 2565 (amending 
subsection (b)).
            
Under this “firmly established statutory construction rule,” we must 
presume the Legislature has adopted our previous definition of “ancillary to or 
part of” under the Act. See Grapevine 
Excavation, Inc., 35 S.W.3d at 5. By instead concocting a more 
expansive definition of “ancillary to or part of” based on Black’s and Webster’s 
dictionaries, the Court ignores the will of the Legislature and the well 
established principles of stare decisis. See 
generally Sw. Bell Tel. Co., 276 S.W.3d at 447 (“Generally, the doctrine of 
stare decisis dictates that once the Supreme Court 
announces a proposition of law, the decision is considered binding precedent.” 
(internal quotation omitted)); Grapevine Excavation, 
Inc., 35 S.W.3d at 5. Despite the Court’s assertion that we have 
consistently disapproved of the holding in Light, our cases on covenants 
not to compete since Light have merely liberalized Light’s holding 
so that the timing of consideration given for a covenant not to compete 
is no longer a technical concern. See Mann Frankfort, 289 S.W.3d at 
851–53 (holding that a promise to provide confidential information can be 
implied from a covenant when confidential information is later provided); 
Sheshunoff, 209 S.W.3d at 650, 655 (holding that 
we should focus less on “overly technical disputes” engendered by 
Light’s footnote six regarding whether the consideration was 
transferred to the employee at the time of the agreement). Yet none of 
the Court’s decisions since Light have questioned the rule requiring 
consideration for a covenant not to compete to give rise to an interest in 
restraining trade. See Mann Frankfort, 289 S.W.3d at 851–53; Sheshunoff, 209 S.W.3d at 649 (“We do not disturb the 
holding in Light.”). In this case, unlike those others, we deal with the 
very nature of the consideration itself, and not its quantity, timing, or 
degree. This is not the type of overly technical dispute that Sheshunoff warned against. See 209 
S.W.3d at 655–56 (listing, in dicta, that “the amount of information an employee 
has received, its importance, its true degree of confidentiality, and the time 
period over which it is received . . . are better addressed 
in determining whether and to what extent a restraint on competition is 
justified” rather than whether the covenant is enforceable).
            
Whether stock options constitute valid consideration is an essential 
inquiry under the prong of the statute requiring that the agreement be 
“ancillary to or part of an otherwise enforceable agreement.” The fact that the 
Court now holds stock options satisfy this prong ignores the consensus amongst 
Texas courts that mere financial compensation as consideration will not support 
an enforceable restraint of trade. See, e.g., 
id. at 650 (holding that allowing 
an employer to enforce a covenant “merely by promising to pay a sum of money” 
would be “inconsistent with Light’s requirements”); Valley Diagnostic 
Clinic v. Dougherty, 287 S.W.3d 151, 157 (Tex. App.—Corpus Christi 2009, no 
pet.) (“A compensation provision made only in exchange for a non-compete promise 
is precisely the sort of restraint that Texas law prohibits.”); Trilogy 
Software, Inc. v. Callidus Software, Inc., 143 
S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied) (“[F]inancial benefits do not give rise to an ‘interest worthy of 
protection’ by the covenant not to compete.”); Strickland v. Medtronic, 
Inc., 97 S.W.3d 835, 839 (Tex. App.—Dallas 2003, pet. dism’d w.o.j.) (holding that the employer’s promise to compensate the 
employee “in the event of economic hardship resulting from the non-compete 
agreement” did not give rise to an interest worthy of protection); see also, 
e.g., Oxford Global Res., Inc. v. Weekley-Cessnun, No. Civ.A. 3:04-CV-0330, 2005 WL 350580, 
*4 n.8 (N.D. Tex. Feb. 8, 2005) (mem. op.) 
(“[S]tock options do not give rise to an employer’s 
interest in restraining competition or solicitation.”); Olander v. Compass Bank & Compass Bancshares, 
Inc., 172 F. Supp. 2d 846, 855 (S.D. Tex. 2001) (explaining that the 
employer failed to “articulate[] any coherent theory explaining how [a] promise 
. . . to grant the right to buy stock at a set price . . . gives rise to an 
interest in restraining [the employee] from competing after he has left 
[the employer]”). Marsh cannot point to one thing of value that it gave Cook 
which now allows him to compete unfairly and which necessitates a restraint of 
trade. The affidavit submitted by Sally Dillenback, 
head of Marsh’s Dallas office, explained that Marsh intended to make its valued 
employees owners so that they would contribute greater efforts to increase 
Marsh’s goodwill. ___ S.W.3d at ___. Giving this 
affidavit any weight ignores the fact that the relevant question under this 
Court’s precedent is whether the consideration given by the employer for the 
covenant not to compete—not the employer’s motivation or some other 
characteristic of the agreement or events leading up to the transaction—gives 
rise to an interest in restraining competition. See Mann Frankfort, 289 S.W.3d at 849; Sheshunoff, 209 S.W.3d at 648–49; Light, 883 
S.W.2d at 647. Why consideration was given has never mattered so much as 
what was given. Trade secrets, confidential information, and special 
training are all forms of consideration that we have recognized may give rise to 
an interest in restraining trade. See Mann Frankfort, 
289 S.W.3d at 852 (confidential information); Sheshunoff, 209 S.W.3d at 649–50 (confidential 
information and specialized training); Light, 883 S.W.2d at 647 n.14 
(trade secrets). They are given to an employee for one reason: to allow 
the employee to perform his job better. They make the employee more valuable to 
the company, and more valuable to other companies, which is why they justify 
covenants not to compete.[8] An employee who receives deferred 
compensation or similar benefits is not in a better position to compete against 
his employer than an employee who has not received such benefits. Stock options 
are not a form of consideration this Court has ever held may support such a 
covenant.[9] Allowing employers to obtain covenants 
not to compete by providing such financial incentives without actually giving 
the employee anything that gives rise to an interest in restraining trade is bad 
policy for Texas, and will make covenants not to compete much more commonplace 
in instances where there is little risk of unfair competition. The “give rise” 
requirement ensures that an employer seeking to restrain competition has given 
consideration for the covenant that fairly necessitates a restraint of trade, 
while respecting the fundamental tenet that at-will employment otherwise permits 
employees to put their talents to fair, competitive use elsewhere. See Sheshunoff, 209 S.W.3d at 659 (Jefferson, C.J., 
concurring) (explaining that only a covenant that protects a “legitimate 
business interest” is enforceable because it is consequently “not a direct 
restraint of trade in violation of public policy”); see also Tex. Bus. & Com. Code 
§ 15.04 (explaining that the purpose of 
Chapter 15 is to “maintain and promote economic competition in trade and 
commerce”).
            
Lastly, if we are to ignore the doctrine of stare decisis, we must at least give trial courts some guidance in 
the enforcement of covenants not to compete, lest we face the multitude of 
issues raised by our new definition of “ancillary to or part of” in the coming 
years.[10]
            
The Court’s new rule not only thwarts the legislative intent behind § 
15.50, but also contradicts the strong policy goals inherent in Chapter 15, 
which protect the interests of free trade and a competitive market. See 
Tex. Bus. & Com. Code § 
15.04 (“The purpose of this Act is to maintain and promote economic competition 
in trade and commerce . . . and to provide the benefits of that competition to 
consumers in the state. The provisions of this Act shall be construed to 
accomplish this purpose . . . .”). For this reason, I dissent.
 
                                                                                                                                                
            
___________________________
                                                                                                                                                            
Paul W. Green
                                                                                                                                                            
Justice
 
OPINION 
DELIVERED: June 24, 2011








[1] Tex. Bus. & 
Com. Code § 15.50(a) (referring to an 
enforceable covenant as one that is created to protect “goodwill or other 
business interest[s]”).

[2] 
See also Justin Belt Co., 502 S.W.2d at 683 (holding that a restraint of trade 
must be “ancillary to and in support of another 
contract”).

[3] 
___ S.W.3d at ___ (citing Alex Sheshunoff Mgmt. Servs., L.P. v. 
Johnson, 209 S.W.3d 644, 653 (Tex. 2006) (quoting House Research 
Org., Bill Analysis, Tex. S.B. 946, 71st Leg., R.S. (1989))).

[4] 
The Court seems to characterize DeSantis as a case dealing solely with confidential 
information. See ___ S.W.3d at ____. DeSantis was also a case about protecting 
goodwill, where we held that the evidence supporting the existence and 
misappropriation of goodwill was insufficient and that the covenant was 
therefore unenforceable. See 793 S.W.2d at 
683–84. Wackenhut, like Marsh in this case, argued that the employee had created 
goodwill for the company and had used that goodwill to attract clients to a 
competitor. Id. at 683. Despite recognizing 
goodwill as an “interest worthy of protection,” we held that Wackenhut failed to 
produce enough evidence that DeSantis actually 
increased Wackenhut’s goodwill or “that he did or even could divert that 
goodwill to himself for his own benefit after leaving Wackenhut.” Id. at 682–83 (considering that at least one of Wackenhut’s 
clients had left Wackenhut to give business to DeSantis’s new employer).

[5] 
While goodwill is an interest worthy of 
protection, under the common law, it’s valuation and 
protection applies more in the sale of a business than the restriction of a 
former employee:
 
The extent to which the restraint is needed to protect 
the promisee’s interests will vary with the nature of 
the transaction. Where a sale of good will is involved, for example, the buyer’s 
interest in what he has acquired cannot be effectively realized unless the 
seller engages not to act so as unreasonably to diminish the value of what he 
has sold. The same is true of any other property interest of which exclusive use 
is part of the value. In the case of a post-employment restraint, however, the 
promisee’s interest is less clear. Such a restraint, 
in contrast to one accompanying a sale of good will, is not necessary in order 
for the employer to get the full value of what he has acquired. Instead, it must 
usually be justified on the ground that the employer has a legitimate interest 
in restraining the employee from appropriating valuable trade information and 
customer relationships to which he has had access in the course of his 
employment. Arguably the employer does not get the full value of the employment 
contract if he cannot confidently give the employee access to confidential 
information needed for most efficient performance of his job. But it is often 
difficult to distinguish between such information and normal skills of the 
trade, and preventing use of one may well prevent or inhibit use of the other. 
Because of this difference in the interest of the promisee, courts have generally been more willing to uphold 
promises to refrain from competition made in connection with sales of good will 
than those made in connection with contracts of employment.
                                                                                

Restatement 
(Second) of Contracts § 188 cmt. b (1981). The distinction between what type of agreement is 
enforceable to protect goodwill in the context of the sale of a business and the 
context of post-employment restriction is unaddressed by §15.50, which applies 
to both contexts. But see Hill v. Mobile Auto Trim, Inc., 725 
S.W.2d 168, 177 (Tex. 1987) (Gonzalez, J., dissenting) (noting that Texas courts 
“scrutinize covenants not to compete in employment relationships more closely 
than covenants not to compete associated with the sale of a business”). 
Regardless, an employer’s assertion of goodwill as the interest being protected 
does not end the inquiry, even under the consideration prong of the statute. How 
that employer protects its goodwill, and what it gives its employee in exchange 
for a covenant not to compete, are what matters. Here, 
Marsh’s reasons for giving stock options are irrelevant; stock options do not 
justify a restraint of trade.

[6] 
See, e.g., Sheshunoff, 
209 S.W.3d at 650 (holding that allowing an employer to enforce a 
covenant “merely by promising to pay a sum of money” would be “inconsistent with 
Light’s requirements”); Valley Diagnostic Clinic v. Dougherty, 287 
S.W.3d 151, 157 (Tex. App.—Corpus Christi 2009, no pet.) (“A compensation 
provision made only in exchange for a non-compete promise is precisely the sort 
of restraint of trade that Texas law prohibits.”); Trilogy Software, Inc. v. 
Callidus Software, Inc., 143 S.W.3d 452, 463 (Tex. 
App.—Austin 2004, pet. denied) (“[F]inancial benefits 
do not give rise to an ‘interest worthy of protection’ by the covenant not to 
compete.”); Strickland v. Medtronic, Inc., 97 S.W.3d 835, 839 (Tex. 
App.—Dallas 2003, pet. dism’d w.o.j.) (holding that the 
employer’s promise to compensate the employee “in the event of economic hardship 
resulting from the non-compete agreement” did not give rise to an interest 
worthy of protection); see also, e.g., Oxford 
Global Res., Inc. v. Weekley-Cessnun, No. Civ.A. 
3:04-CV-0330, 2005 WL 350580, *4 n.8 (N.D. Tex. Feb. 8, 2005) (mem. op.) (“[S]tock options 
do not give rise to an employer’s interest in restraining competition or 
solicitation.”); Olander v. Compass Bank & Compass Banchsares, 
Inc., 172 F. Supp. 2d 846, 855 (S.D. Tex. 2001) (explaining that the 
employer failed to “articulate[] any coherent theory explaining how [a] promise 
. . . to grant the right to buy stock at a set price . . . gives rise to an 
interest in restraining [the employee] from competing after he has left 
[the employer]”).

[7] 
As the Court points out, the Legislature is 
capable of correcting our pronouncements on covenants not to compete that it 
disagrees with, as it passed the Act in 1989 to overturn our decision in Hill 
v. Mobile Auto Trim, Inc., 725 S.W.2d 168 (Tex. 1987), within two years of 
its issuance. See ___ S.W.3d at ___.

[8] 
In this case there was no transfer to Cook of 
anything that allowed him to perform his job better or be more competitive 
against Marsh; as Marsh admits,“in the insurance brokerage business, because the 
products and services offered by brokers are largely the same, the ability to 
develop quality customer relationships” is what truly sets one firm apart from 
another. What Marsh does not address, however, is that in this situation, 
non-compete agreements may simply be a cheaper alternative to paying a higher 
salary or bonus. The Court recognizes that Texas clearly disfavors the use of 
non-compete agreements for such a purpose. See ___ S.W.3d at ___ (citing 
Potomac Fire Ins. Co. v. State, 18 S.W.2d 929, 934 (Tex. Civ. App.—Austin 
1929, writ ref’d) (holding that a contract between two 
insurance companies to limit compensation was unenforceable as it was intended 
to “crush and destroy competition”)).

[9] 
See Sheshunoff, 209 
S.W.3d at 660 (explaining that the consideration is usually of the type that 
increases the employee’s market value by, for example, giving the employee 
“special knowledge and skills” that “increase [the employee’s] value and 
compensation”). “The covenant, in turn, ensures that the costs incurred to 
develop human capital are protected against competitors who, having not made 
such expenditures, might offer higher salaries to employees and thereby 
appropriate the employer’s investment.” Id. Stock options do not develop 
the kind of human capital that can be taken by competitors, nor do they develop 
“special knowledge and skills.” While stock options could motivate an employee 
to create goodwill, thus increasing the value of the interest worthy of 
protection, they don’t themselves create an interest worthy of protection. The 
fact that an employee makes his employer’s net worth grow does not alone justify 
a restraint of trade absent the employer’s investment in making the employee 
more valuable to competitors. The employee is no more valuable to competitors 
after he receives stock options in the way that he would be after he receives 
special training, trade secrets, or confidential information.

[10] Stare decisis “results in predictability in the law, which allows 
people to rationally order their conduct and affairs.” Grapevine Excavation, Inc., 35 S.W.3d at 5. “[I]n most matters it is more important that the applicable rule of 
law be settled than that it be settled right.” John R. Sand & 
Gravel Co. v. United States, 552 U.S. 130, 139 (2008) (quoting Burnet v. 
Coronado Oil & Gas Co., 285 U.S. 393, 406 (1932) (Brandeis, J., 
dissenting)). “To overturn a decision settling one such matter simply because we 
might believe that decision is no longer ‘right’ would inevitably reflect a willingness to reconsider others. And that 
willingness could itself threaten to substitute disruption, confusion, and 
uncertainty for necessary legal stability.” Id. “[I]f we did not follow 
our own decisions, no issue could ever be considered resolved. The potential 
volume of speculative relitigation under such 
circumstances alone ought to persuade us that stare decisis is a sound policy.” Weiner v. 
Wasson, 900 S.W.2d 316, 320 (Tex. 
1995).